UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL MILLER,                                    Case No. 17-12756

     Plaintiff                                 Arthur J. Tarnow
v.                                                 United States District Judge

COMMISSIONER OF SOCIAL                             Stephanie Dawkins Davis
SECURITY                                           United State Magistrate Judge

     Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 15, 16)**

## I.  PROCEDURAL HISTORY

    A.  <u>Proceedings in this Court</u>

On August 22, 2017, plaintiff Michael Miller filed the instant suit seeking

judicial review of the Commissioner's unfavorable decision disallowing benefits.

(Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District

Judge John Corbett O'Meara referred this matter to the undersigned for the

purpose of reviewing the Commissioner's decision denying plaintiff's claim for

disability and disability insurance benefits.  (Dkt. 4).[1]  This matter is before the

---

[1]  This case was recently reassigned to District Judge Arthur J. Tarnow.  *See* Text-Only
Notice of Reassignment dated July 3, 2018.

Court on cross-motions for summary judgment.  (Dkt. 15, 16).  Plaintiff also filed a reply brief in support of her motion for summary judgment.  (Dkt. 17).

      B.    <u>Administrative Proceedings</u>

Plaintiff filed the instant claim for supplemental security income on March 20, 2014, alleging that he became disabled beginning June 1, 1998.  (Tr. 12).  The claim was initially disapproved by the Commissioner on August 15, 2014.  (Tr. 12).  Plaintiff requested a hearing and on April 22, 2016, plaintiff appeared, with counsel, before Administrative Law Judge (ALJ) Kari Deming, who considered the case de novo.  (Tr. 33-79).  In a decision dated June 16, 2016, the ALJ found that plaintiff was not disabled.  (Tr. 9-25).  Plaintiff requested a review of this decision and the ALJ's decision became the final decision of the Commissioner when the Appeals Council, on July 5, 2017, denied plaintiff's request for review.  (Tr. 1-6); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that the Commissioner's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    FACTUAL BACKGROUND

Plaintiff, born in 1967, was 46 years of age on the date the application was filed.  (Tr. 24).  Plaintiff has no past relevant work.  (Tr. 24).  Plaintiff dropped out

of school in the eighth grade based on his inability to comprehend what was going on in school.[2]  (Tr. 41-42).  Plaintiff resides with his sister.  (Tr. 69).  Plaintiff is unable to read and write and his sister manages his mail and completes forms for him.  (Tr. 59-60, 63).  Plaintiff worked a few part-time low skill jobs over the years, including at a packing house, a fruit mart, a post office and an auto parts store.  (Tr. 254).  He also had brief stints in landscaping and cleaning uniforms. (Tr. 44-45).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the application date.  (Tr. 14).  At step two, the ALJ found that plaintiff's osteoarthritis, mild, and chronic left lower extremity pain secondary to healing deformity; minimal paresthesia of the left forearm, secondary to prior trauma; and chronic healing fracture of the clavicle were "severe" within the meaning of the second sequential step, and that plaintiff's minimal distal medial nerve neuropathy of the right hand, hypertension, elevated cholesterol, and obesity were not severe. (Tr. 14).  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (Tr. 14-16).

---

[2] There is some suggestion in the record that plaintiff dropped out of school somewhere between sixth and ninth grade, but the precise timing is not entirely clear.  (Tr. 41, 80, 191, 249, 311).

The ALJ determined that plaintiff has the following residual functional

capacity ("RFC"):

> After careful consideration of the entire record, I find that
> Claimant has the residual functional capacity to perform
> light work as defined in 20 CFR 416.967(b), limited to
> work permitting the Claimant to:
>> • Sit, stand and walk up to the exertional limits,
>> with the opportunity to shift between positions
>> every 30 minutes;
>> • Occasionally kneel, crawl, crouch, and stoop;
>> • Never climb stairs, ropes, ladders or scaffolding;
>> • Never engage in foot control operations;
>> • Never reach overhead with the left upper
>> extremity;
>> • Frequently handle, finger and feel; and
>> • Engage in simple, routine tasks, defined as those
>> generally mastered after a short demonstration,
>> that are goal-oriented rather than production-
>> paced.

(Tr. 16).  At step four, the ALJ found that plaintiff had no past relevant work.   (Tr.

24).  At step five, the ALJ denied plaintiff benefits because he could perform a

significant number of jobs available in the national economy, based on the

vocational expert testimony.  (Tr. 24-25).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may . . . consider the credibility of a claimant

when making a determination of disability."); *Walters*, 127 F.3d at 531

("Discounting credibility to a certain degree is appropriate where an ALJ finds

contradictions among medical reports, claimant's testimony, and other evidence.").

"However, the ALJ is not free to make credibility determinations based solely

upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*,

486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are

conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion." *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800

F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability

Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.).

Title II benefits are available to qualifying wage earners who become disabled

prior to the expiration of their insured status; Title XVI benefits are available to

poverty stricken adults and children who become disabled.  F. Bloch, Federal

Disability Law and Practice § 1.1 (1984).  While the two programs have different

eligibility requirements, "DIB and SSI are available only for those who have a

'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability"

means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

    The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis.  The Commissioner's

regulations provide that disability is to be determined through the application of a

five-step sequential analysis set forth at 20 C.F.R. §§ 404.1520, 416.920.

Essentially, the ALJ must determine whether:  (1) the plaintiff is engaged in

significant gainful activity; (2) the plaintiff has any severe impairment(s); (3)

plaintiff's impairments alone or in combination meet or equal a Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to perform past relevant work, whether there is work in the national economy that the plaintiff can perform.  (*Id.*).  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding rejecting the existence of disability, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion.  *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    <u>Step Three Error</u>

    1.    Parties' arguments

Plaintiff argues that the ALJ committed reversible error when she failed to discuss or consider his intellectual impairment in the context of whether plaintiff met or equaled Listing 12.05, and because the ALJ failed to obtain an expert opinion on the issue of equivalency for this Listing.  Plaintiff points out that the IQ scores from Dr. Tripi included a verbal comprehension score of 63, and a full-scale IQ score of 69 (Tr. 401).  Dr. Tripi opined in her report that the scores were valid. (Tr. 400).  Plaintiff's counsel, in briefing before the ALJ, specifically asked that the ALJ consider Listing 12.05(C) or (D) in light of the qualifying IQ scores of Dr. Tripi.  (Tr. 296).  According to plaintiff, Dr. Tripi's report on its face supports a finding that plaintiff at least met the first prong of part (C).  As to the second prong – that there be additional severe impairment imposing a limitation of functioning – that also appears to be met on the face of the decision, as the ALJ found that Miller was suffering from other severe impairments.  (Tr. 14).  According to plaintiff, despite the evidence showing that he met the (C) criteria of Listing 12.05, the ALJ did not discuss this Listing.

Plaintiff maintains that the ALJ's failure constitutes reversible error. Plaintiff points to *Sheeks v. Comm'r of Soc. Sec.*, 544 Fed. Appx. 639 (6th Cir. 2013), in which the Sixth Circuit held that, while the ALJ is not required to

evaluate a claimant according to every listing, "where the record raises a 'substantial question' as to whether the claimant meets a listing, the ALJ must address that listing in her decision." *Sheeks*, at 641-42 (quoting *Abbott v. Sullivan*, 905 F. 2d 918, 925 (6th Cir. 1990). The record raises a substantial question where there is evidence in the record that demonstrates the claimant "reasonably could meet or equal every requirement of the listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 Fed. Appx. 426, 432 (6th Cir. 2014).

According to plaintiff, there is a substantial question in this case that plaintiff's impairments met, or were at least equal in severity, to the requirements of Listing 12.05. First, Dr. Tripi's scores on their face, in combination with the ALJ's severe impairment findings, provide *prima facie* evidence that he met the (C) criteria of the listing. Plaintiff acknowledges however, that he must also show that the record raises a substantial question that he met the introductory paragraph requirements of the Listing. Plaintiff argues that, in the absence of school records, other courts have recognized a presumption that IQ scores remain relatively constant throughout life, and therefore, IQ tests performed after the age of 22 can be used to show a claimant's IQ during the developmental period – i.e. before age 22. The Eleventh Circuit, for example, held that "absent evidence of sudden trauma that can cause retardation, IQ tests create a rebuttable presumption of a fairly constant IQ throughout life." *Hodges v. Barnhart*, 276 F. 3d 1265, 1266,

11

1268-69 (11th Cir. 2001); s*ee also Luckey v. U.S. Dep't of Health & Human Servs.*, 890 F. 2d 666, 668 (4th Cir. 1989) ("[i]n the absence of any evidence of a change in a claimant's intellectual functioning, it must be assumed that the claimant's IQ had remained relatively constant") (relying on *Branham, v. Heckler*, 775 F. 2d 1271 (4th Cir. 1985); *Guzman v. Bowen*, 801 F. 2d 273, 275 (7th Cir. 1986) ("we must and do assume that an IQ test taken after the insured period correctly reflects the person's IQ during the insured period"); *see also Mathious v. Barnhart*, 490 F. Supp. 2d 833, 852 (E.D. Mich. 2007) ("Other Circuits have allowed IQ tests taken after the required onset date prior to age 22 to be used to establish disability under the listing in the absence of evidence indicating some factor that might have negatively affected the IQ test…the Sixth Circuit's *Foster* case does not preclude such a finding in this Circuit…).  In other words, because the ALJ in this case did not address Listing 12.05 at all – and did not address plaintiff's qualifying IQ scores – this Court need only decide whether the record raises a "substantial question" as to whether plaintiff meets or equals the listing.  Plaintiff contends that this Court does not need to decide whether the listing was actually met.  Plaintiff posits that in light of case law in several other circuits, plaintiff's current IQ scores – coupled with testimony that he dropped out of school due to problems with comprehension – should be sufficient to at least raise a question that Listing 12.05 was met, especially since counsel addressed the case

law from other circuits in pre-hearing briefing to the ALJ when requesting that Listing 12.05 be considered. (Tr. 296).

Plaintiff acknowledges that the record is short on evidence of deficits in adaptive functioning from the developmental period, but notes that plaintiff's sister, Michelle Matthews, testified that he always struggled in school, and that his teachers told his mother that he had a learning disability. (Tr. 70-71). Matthews testified that plaintiff always depended on their mother for everything, and that he has always had help from either Matthews or their mother. (Tr. 69). Matthews testified that plaintiff had never lived on his own. *Id*. Further, plaintiff's work history does not indicate that he ever held any sort of skilled job, and struggled to maintain the unskilled jobs he had, such that the ALJ found that he had never engaged in substantial gainful activity. (Tr. 45). Matthews testified that he had been let go from jobs in the past because of problems with comprehension, as well as due to physical issues. (Tr. 70). Plaintiff contends that the above-described testimony and observations in this case raised a "substantial question" that he had deficits in adaptive functioning, which should have triggered an evaluation of Listing 12.05.

Plaintiff also argues that it is reversible error that the ALJ failed to obtain an opinion on equivalence with respect to Listing 12.05. In this case, plaintiff's IQ scores from Dr. Tripi were obtained after the State agency medical consultant had

the opportunity to review the medical file. (Tr. 105). At the time of the initial denial, Dr. James Tripp, E.D.D., determined that there was no medically determinable mental impairment established. (Tr. 105). Plaintiff points out that Dr. Tripp never had the opportunity to consider plaintiff's intellectual functioning. Therefore, no medical reviewer or consulting doctor provided an opinion on equivalence for Listing 12.05. Since the record raises a "plausible inference" that plaintiff's impairments at least equaled Listing 12.05(C), plaintiff maintains that remand is appropriate for a medical expert opinion on the issue. *See Klink v. Comm'r of Soc. Sec.*, 2014 WL 902707, at *10 (E.D. Mich. Mar. 7, 2014) (remanding where lay review of the record suggested that "it is at least plausible that Plaintiff's impairments could medically equal" a listed impairment); *see also McKeel v. Comm'r of Soc. Sec.*, 2015 WL 3932546, at *10 (E.D. Mich. June 26, 2015) ("A review of the entire record indicates, in the opinion of this layperson, that is it plausible that Plaintiff's impairments could medically equal a listed impairment.").

In response, the Commissioner argues that the record lacks evidence for plaintiff to carry his burden of meeting Listing 12.05's diagnostic paragraph. *See Foster*, 279 F.3d at 354 ("A claimant must demonstrate that her impairment satisfies the diagnostic description for the listed impairment in order to be found disabled thereunder."). Thus, irrespective of his ability to satisfy the subparagraph

14

C criteria, the Commissioner maintains that plaintiff cannot establish that he meets or medically equals all of the Listing's criteria. According to the Commissioner, the Sixth Circuit has already rejected a similar argument in *Sheeks*, where the plaintiff did not specifically advance Listing 12.05(C) before the ALJ, and the ALJ did not discuss that listing in the decision. *Id*. at 641. The Sixth Circuit found that the omission would not be cause for remand unless "the record 'raise[s] a substantial question as to whether [the claimant] could qualify as disabled' under [the] listing[.]" *Id*. (citing *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)). *Sheeks* went on to find that the plaintiff failed to meet that standard because he could not show a substantial question of whether he could satisfy Listing 12.05's capstone paragraph, based on attendance at elementary school special education classes and his testimony that he had difficulty paying attention in school. *See id.*. *See Sheeks*, 544 Fed. Appx. at 641-42. Further, the Commissioner maintains that recent intellectual testing is not necessarily indicative of a plaintiff's general intellectual functioning prior to age 22. *See Foster*, 279 F.3d at 345-55. In *Foster*, the Sixth Circuit pointed out that plaintiff's IQ testing occurred when she was 42; and, although she left school after completing ninth grade, the record was unclear why. *See id*. at 355; *see also Mathious v. Barnhart*, 490 F. Supp. 2d 833, 843 (E.D. Mich. 2007) (IQ testing when the plaintiff was 44 was insufficient to show

intellectual functioning prior to age 22 even where the plaintiff attended special education classes).

The Commissioner here asserts that concerning his intellectual functioning, plaintiff's only evidence is his IQ scores—obtained when he was more than 48 years old—and his sister's statement that he struggled in school with what his teachers thought was a learning disorder.  The Commissioner acknowledges that some circuits presume IQ scores remain static over time, but asserts that plaintiff's showing here does not satisfy the standard for that which the Sixth Circuit has found sufficient to create a substantial question about his ability to meet the listing. *See Sheeks*, 544 Fed. Appx. at 641-42.  According to the Commissioner, plaintiff offers no more than what the Sixth Circuit rejected in *Foster* and *Sheeks*, and what the district court rejected in *Mathious*: contemporary IQ scores along with educational history.  *See id.*; *Foster*, 279 F.3d at 354-55; *Mathious*, 490 F. Supp. 2d at 843; *see also Robinson v. Colvin*, 2015 WL 12711578, at *10 (E.D. Mich. July 14, 2015) (finding the plaintiff failed to raise substantial question that he could meet listing 12.05 where he presented evidence of IQ scores after age 22 and education records).

The Commissioner also argues that plaintiff has not identified any evidence that he had deficits in "social skills, communication, and daily living skills" prior to age 22.  To the contrary, on a function report that plaintiff completed, he wrote

that he "experienced pain" dressing and bathing, but did not indicate an inability to perform these activities because of mental limitations. (Tr. 263). He also checked that he has no problems getting along with family, friends, neighbors, or others. (Tr. 267). And, he did not check off that his impairments limited his ability to talk, hear, or get along with others. (Tr. 267). Further, on a third party function report, plaintiff's mother indicated that plaintiff did not have any personal care limitations; he did not have problems getting along with others; and his impairments did not limit his ability to talk, hear, concentrate, or understand. (Tr. 237, 241). Similarly, the ALJ found that plaintiff had no restriction in his activities of daily living, no difficulties in social functioning, and only mild difficulties in concentration, persistence, and pace. (Tr. 15). Plaintiff has not challenged those findings. Finally, while plaintiff's sister testified that he was let go from a job because of "problems with comprehension" (Tr. 70), there is no evidence that the referenced job was prior to age 22. The Commissioner maintains, therefore, that plaintiff cannot point to evidence that creates a substantial question of his ability to demonstrate deficits in adaptive functioning prior to age 22.

The Commissioner also urges the Court to reject plaintiff's argument that the ALJ's decision did not consider whether he could medically equal Listing 12.05(C), arguing that "a finding of equivalence under Listing 12.05(C) will very rarely be required." *Foster*, 279 F.3d at 355 (internal quotations and citations

omitted).  Plaintiff must demonstrate medical findings equal in severity to all the criteria for the one most similar listed impairment.  *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).  According to the Commissioner, even generously construing the evidence plaintiff highlights, none of it consists of medical findings related to the developmental period; i.e., before age 22.  In *Mathious*, the court rejected the plaintiff's medical equivalency argument for the same reason.  *Mathious*, 490 F. Supp. 2d at 843-44.  There, the plaintiff pointed to post-age 22 intellectual testing and his statement that he attended special education classes.  *See id*. at 844.  Because, however, there was no medical evidence from the developmental period, plaintiff could not carry his burden to demonstrate medical equivalency to a listing.  *See id*.; *see also Daniels v. Comm'r of Soc. Sec*., 70 Fed. Appx 868, 873-74 (6th Cir. 2003) (holding the plaintiff failed to show he medically equaled Listing 12.05(C) without medical evidence satisfying the capstone paragraph criteria).

The Commissioner maintains that the *Mathious* court's reasoning should apply with equal force here.  The only medical evidence plaintiff points to relative to his listing argument was obtained in 2016—well after the developmental period.  (Tr. 11; Tr. 401).  Thus, the Commissioner maintains that there is no medical evidence in the record that pertains to plaintiff's intellectual functioning or adaptive functioning during the developmental period.  Even if the Court accepts plaintiff's argument that his recent IQ scores are indicative of his developmental

period IQ scores, the Commissioner argues that plaintiff still fails to identify medical evidence of deficits in adaptive functioning (i.e., social skills, communication, and daily living skills) prior to age 22.  Because of the lack of medical evidence from the relevant period, the Commissioner says that plaintiff cannot meet the showing necessary for him to prove medical equivalency to Listing 12.05(C).

>2.    Analysis and Conclusion

In the third step of the sequential analysis, to determine a claimant's entitlement to SSI or DIB, it is the claimant's burden to bring forth evidence to establish that his impairment meets or is medically equivalent to a listed impairment.  *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987).  In order to meet the requirements of a listed impairment, a plaintiff bears the burden of proof that *all* of a Listing's criteria are met.  *See Sullivan v. Zebley*, 493 U.S. 521, 530-32 (1990); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986) (a claimant's impairment must meet *every element* of a Listing before the Commissioner may conclude that he is disabled at Step III).  An impairment that manifests only some of the criteria in a particular Listing, "no matter how severely, does not qualify."  *Zebley*, 493 U.S. at 530.

Listing 12.05 provides the criteria used to determine when "mental retardation is severe enough to preclude gainful activity." *Turner v. Comm'r of Soc. Sec.*, 381 Fed. Appx. 488, 491 (6th Cir. 2010).[1]  As explained in the Listings,

> The structure of the listing for intellectual disability (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing. Paragraphs A and B contain criteria that describe disorders we consider severe enough to prevent your doing any gainful activity without any additional assessment of functional limitations. For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c). If the additional impairment(s) does not cause limitations that are "severe" as defined in §§ 404.1520(c) and 416.920(c), we will not find that the additional impairment(s) imposes "an additional and significant work-related limitation of function," even if you are unable to do your past work because of the unique features of that work.  Paragraph D contains the same functional criteria that are required under paragraph B of the other mental disorders listings.

---

[1] In 2013, a revised version of listing 12.05 went into effect which replaced the term "mental retardation" with "intellectual disability." *Peterson v. Comm'r of Soc. Sec.*, 552 Fed. Appx. 533, 536 n.1 (6th Cir. 2014).  The substantive components of the listing remained unchanged. *See Hickel v. Comm'r of Soc. Sec.*, 539 Fed. Appx. 980, 982 n.1 (11th Cir. 2013). The terms "mental retardation" and "intellectual disability" can be used interchangeably because they refer to the same disorder. *See Talavera v. Astrue*, 697 F.3d 145, 148 n. 2 (2d Cir. 2012).

Thus, to qualify as disabled under Listing 12.05, a claimant must satisfy both the diagnostic description in the introductory paragraph of the Listing and one of the four sets of criteria found in Subparts A through D.  *Foster v. Halter*, 279 F.3d 348, 354-55 (6th Cir. 2001).  Further, the Listings explain that standardized intelligence test results are essential to the adjudication of all cases of intellectual disability that are not covered under the provisions of 12.05A.  *See* 12.00(D)(6)(b).

Here, plaintiff asserts that there is a substantial question as to whether he meets (or equals) Listing 12.05(C), which requires a claimant to meet three requirements in order to establish a disability: (1) he must satisfy the introductory paragraph of Listing 12.05, requiring a showing of significantly subaverage general intellectual functioning with deficits in adaptive functioning that initially manifested prior to the age of 22; (2) he must establish that he meets the first requirement of 12.05(C) by showing that he has a valid verbal, performance or full-scale IQ score of 60 through 70; and (3) he must establish that he meets the second requirement of 12.05(C) by showing he has a physical or mental impairment, other than the intellectual disability impairment, that imposes an additional and significant work-related limitation of function.  20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.00A, 12.05, 12.05(C) (version in effect from May 24, 2016 to September 28, 2016); *Foster*, 279 F.3d at 354.

There does not seem to be any dispute that plaintiff's IQ testing and other physical impairments satisfy the requirements of 12.05(C).  Thus, the focus of the dispute before the Court is whether plaintiff has raised a substantial question that he can meet or equal the introductory/diagnostic portion of the Listing.  In the view of the undersigned, he has not done so.  Here, plaintiff must show that there is a "substantial question" that he meets the Listing, which means providing sufficient evidence demonstrating that "he reasonably could meet or equal every requirement in the Listing."  *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 Fed. Appx. 426, 432 (6th Cir. 2014).

      a.     Subaverage intellectual functioning before age 22

As explained in *Bush v. Comm'r of Soc. Sec.*, 2017 WL 120935, *6 (M.D. Tenn. Jan. 11, 2017), "IQ scores after the age of 22 or before may satisfy the listing because under SSA policy, IQ scores tend to stabilize by age 16 and generally remain constant as an adult, absent intervening factors such as an accident or brain damage."  Citing POMS DI 24515.055(A)[3] ("While there is obviously no specific age at which test results suddenly become 'valid' (i.e.,

---

[3] "POMS sets forth the SSA's official policies and procedures for carrying out its responsibilities under the Social Security Act.... While these policies and procedures do not have the force of law and are not binding on the agency, ... they represent the SSA's interpretation of the law, including its governing statutes and regulations. *Wilson v. Apfel*, 81 F.Supp.2d 649, 653 (W.D.Va.2000)."  *Tanker v. Comm'r of Soc. Sec.*, 2015 WL 5023024, at *2 (N.D. Ohio Aug. 24, 2015) (quoting *Bronstein v. Apfel*, 158 F.Supp.2d 1208, 1210 n. 1 (D. Colo. 2001)).

accurate and stable indices of the subject's abilities), IQ's obtained from tests

having the desirable qualities described above tend to stabilize by the age of 16."; 

*Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001) ("[A] person's IQ is presumed 

to remain stable over time in the absence of any evidence of a change in a 

claimant's intellectual functioning.").  The *Bush* court also explained that "[w]hile 

the claimant may use a qualifying IQ score before the age of 22 to demonstrate that 

his subaverage intellectual functioning initially manifested during his 

developmental period, *see Daniels v. Comm'r of Soc. Sec*., 70 Fed. Appx. 868, 873 

(6th Cir. 2003), a claimant is by no means required to produce an IQ score 

obtained prior to age 22."  *West v. Comm'r Soc. Sec. Admin*., 240 Fed. Appx. 692, 

698 (6th Cir. 2007).  Given the Sixth Circuit's holding (albeit in an unpublished 

opinion) that IQ testing before the age of 22 is <u>not required</u> to meet the Listing, and 

the Listing's clear statement that IQ testing <u>is required</u> to meet all subparts of the 

Listing except 12.05(A), it follows that valid IQ testing obtained after the age of 22 

can be considered in assessing the requirements of the introductory paragraph of 

the Listing as to subaverage intelligence.[4]  There is no real dispute that plaintiff's 

Full-Scale IQ of 69 and verbal comprehension IQ score of 63 satisfies subsection 

(C) of Listing 12.05.  However, IQ evidence obtained well after the age of 22 by 

---

[4] Notably, nothing in Listing 12.05 suggests that IQ testing during the developmental period is required to meet or equal the Listing.

itself is not sufficient to satisfy the requirement that subaverage intellectual functioning manifested during the developmental period.

Indeed, even assuming that plaintiff's IQ testing can be extrapolated to the developmental period, Sixth Circuit authority suggests that such evidence, even when combined with the evidence that plaintiff left school in eighth grade because he was unable to comprehend things, was told he had a learning disability, and always struggled in school is insufficient to suggest that plaintiff's satisfies the introductory diagnostic paragraph.  Here, there is some anecdotal evidence that plaintiff left school in eighth (or sixth) grade because he was unable to comprehend things, that he was told he had a learning disability, and that he always struggled in school.  Plaintiff also testified that he could not read or write when he was in school and cannot do so now.  (Tr. 59).  Yet, this evidence is largely indistinguishable from that found insufficient to raise a substantial question that plaintiff could meet or equal the Listing in *Robinson*, a case that relied in large part on *Foster* and *Sheeks*.

Just as in this case, the ALJ in *Robinson* did not consider Listing 12.05(C) in the decision.  In *Robinson*, the plaintiff came forward with evidence of IQ testing completed after the developmental period that fell in the 60 to 70 range, along with educational records indicating that he attended special education classes and did not graduate from high school.  *Robinson*, at *10.  The court concluded that similar

24

to *Foster*, the educational records and post-developmental period IQ testing did not

satisfy Listing 12.05(C)'s requirement for evidence of subaverage intellectual

functioning <u>before age 22</u>.  *See also*, *Foster v. Halter* (IQ testing and medical

evaluations showing subaverage intellectual functioning after age 22 combined

with school record merely indicating that the plaintiff left school in ninth grade for

unknown reasons was insufficient under Listing 12.05(C)).  As noted, plaintiff here

has not even offered educational records.  Rather, he relies on the recent I.Q.

testing and testimony from himself and his sister.  As noted by the ALJ, however, a

2003 psychological report from the Michigan Department of Corrections noted that

his "intellectual level was within a normal range," and psychological testing did

not suggest any "cognitive impairments or indicators of organic cerebral

dysfunction."  (Tr. 19).  Taken together, does not appear that plaintiff has raised a

substantial question that he might meet this portion of the listing.

> b.      Deficits in adaptive skills before age 22

The Sixth Circuit has described the adaptive skills portion of Listing 12.05

as follows:

> The adaptive skills prong evaluates a claimant's
> effectiveness in such areas as social skills,
> communication skills, and daily-living skills.  To
> determine the definition of mental retardation under the
> SSA, it is appropriate to consult leading professional
> organizations' definitions.  The American Psychiatric
> Association defines adaptive-skills limitations as
> "[c]oncurrent deficits or impairments . . . in at least two

of the following areas: communication, self-care, home
living, social/interpersonal skills, use of community
resources, self-direction, functional academic skills,
work, leisure, health, and safety."

*Hayes v. Comm'r of Soc. Sec.*, 357 Fed. Appx. 672, 677 (6th Cir. 2009) (internal

citations omitted) (finding plaintiff's adaptive skills were not deficient as she cared

for herself and her husband, cooked, washed clothes, shopped, managed her

finances and used public transportation).

There is also insufficient evidence that plaintiff had deficits in adaptive skills

before the age of 22 in order to meet the introductory/diagnostic paragraph of the

Listing.  Plaintiff's sister, Michelle Matthews, testified that he had always

struggled in school, and that his teachers had told his mother that he had a learning

disability.  (Tr. 70-71).  Matthews testified that plaintiff always depended on their

mother for everything, and that he has always had help from either Matthews or

their mother.  (Tr. 69).  Significantly, Matthews testified that plaintiff had never

lived on his own.  *Id.*  Further, plaintiff's work history shows that he never held

any sort of skilled job, and struggled to maintain the unskilled jobs he had, such

that the ALJ found that he had never engaged in substantial gainful activity.  (Tr.

45).  Matthews testified that plaintiff had been let go from jobs in the past because

of problems with comprehension, as well as due to physical issues.  (Tr. 70).

According to the Commissioner, plaintiff has not identified any evidence

that he had deficits in "social skills, communication, and daily living skills" prior

to age 22.  To the contrary, on a function report that plaintiff completed, he wrote that he "experienced pain" dressing and bathing, but did not indicate an inability to perform these activities because of mental limitations.  (Tr. 263).  He also checked that he has no problems getting along with family, friends, neighbors, or others. (Tr. 267).  And, he did not check off that his impairments limited his ability to talk, hear, or get along with others.  (Tr. 267).  Plaintiff's mother also indicated that plaintiff did not have any personal care limitations, he did not have problems getting along with others, and his impairments did not limit his ability to talk, hear, concentrate, or understand.  (Tr. 237, 241).  Similarly, the ALJ found that plaintiff had no restriction to his activities of daily living, no difficulties in social functioning, and only mild difficulties in concentration, persistence, and pace.  (Tr. 15).  The Commissioner says that plaintiff has not challenged those findings.  The Commissioner also points out that while plaintiff's sister testified that he was let go from a job because of "problems with comprehension" (Tr. 70), there is no evidence that job was prior to age 22.  Thus, the Commissioner maintains that plaintiff cannot point to evidence that creates a substantial question of his ability to demonstrate deficits in adaptive functioning prior to age 22.

The Commissioner's overarching point – that evidence similar to, and even greater than that offered by plaintiff has been rejected by the Sixth Circuit and other courts in this district – is well-taken.  Plaintiff presents no more evidence of

deficits in adaptive functioning than the plaintiffs in *Robinson* did.  Indeed, in

*Peterson v. Comm'r of Soc. Sec.*, 552 Fed. Appx. 533 (6th Cir. 2014), the Sixth

Circuit held that "neither circumstantial evidence such as school records nor a

history of special education combined with an adult IQ score are necessarily

enough to demonstrate that a claimant had adaptive functioning deficits before age

twenty-two."  *Id*. at 540 (citing *Eddy v. Comm'r of Soc. Sec.*, 506 Fed. Appx. 508,

510 (6th Cir. 2012)).

> ### c.    Equivalency

As plaintiff points out, the Commissioner is generally required to have a

medical opinion to support the equivalency analysis.[4]  *See e.g.*, *Barnett v.*

---

[4] The expert opinion requirement for equivalency can be satisfied by a medical advisor's signature on the Disability Determination Transmittal Form.  *Stratton*, 987 F.Supp.2d at 148 (citing SSR 96-6p, 1996 WL 374180, at *3 (The expert-opinion evidence required by SSR 96-6p can take many forms, including "[t]he signature of a State agency medical ... consultant on an SSA-831-U5 (Disability Determination and Transmittal Form).")).  In the instant record, there is Disability Determination and Transmittal Form signed by Dr. Claire Ammoun-Issa, but according to the Disability Determination Explanation that she completed, she only considered plaintiff's physical impairments and did not consider Listing 12.05.  (Tr. 80-88).  James Tripp, Ed.D, considered plaintiff's mental impairments in a Disability Determination Explanation dated August 14, 2014, but he did not consider Listing 12.05 and is not qualified to assess plaintiff's intellectual functioning in combination with his physical impairments because he is not a medical doctor.  (Tr. 101-108).  *See Greene-Howard v. Comm'r of Soc. Sec.*, 2017 WL 2118256, at *11 (E.D. Mich. May 15, 2017) (citing *Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001) (finding that a psychologist was not qualified to diagnose a claimant's physical conditions); *Byerley v. Colvin*, 2013 WL 2145596, at *11 (N.D. Ind. May 14, 2013) ("Because the psychologist who prepared the form did not consider physical impairments, it cannot be relied on as expert opinion that Plaintiff's combination of physical and mental impairments do not equal a Listing.")).

*Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("Whether a claimant's impairment

equals a listing is a medical judgment, and an ALJ must consider an expert's

opinion on the issue.") (citing 20 C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*,

1995 WL 697215, at *2 (6th Cir. Nov. 22, 1995) ("Generally, the opinion of a

medical expert is required before a determination of medical equivalence is

made.") (citing 20 C.F.R. § 416.926(b)).  Even though the ALJ may have erred by

not obtaining an opinion on equivalence as to Listing 12.05 (*see* note 4), the

undersigned suggests that any such error is harmless.  *See Lusk v. Comm'r of Soc.

Sec.*, 106 Fed. Appx. 405, 411 (6th Cir. 2004) (to show equivalence, the plaintiff

must "present medical evidence that describes how his impairment is equivalent to

a listed impairment"); *Bondy v. Comm'r of Soc. Sec.*, 2015 WL 1530435, at *20

(E.D. Mich. Mar. 31, 2015) (Murphy, J.); *Buchanon v. Comm'r of Soc. Sec.,* 2015

WL 927831, at *6-7 (E.D. Mich. Mar. 4, 2015) (Steeh, J.).  Although courts in this

district generally remand when the record contains "no equivalence opinion

whatsoever," they also acknowledge that "the lack of a medical opinion on

equivalence can be deemed harmless error in some cases."  *Bukowski v. Comm'r of

Soc. Sec.*, 2014 WL 4823861, at *6 (E.D. Mich. Sept. 26, 2014) (Michelson, J.);

*see also Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 655-58 (6th Cir. 2009)

(applying harmless-error analysis in context of ALJ's step-three findings).  Here,

as discussed above in detail, the evidence does suggest that plaintiff could

reasonably meet or equal Listing 12.05(c).  To show that the error was not

harmless, plaintiff would need to come forward with some evidence to suggest that

there was a reasonable possibility of a finding of equivalence.  *Brown v. Comm'r*

*of Soc. Sec.*, 2014 WL 222760, at *13 (E.D. Mich. Jan. 21, 2014) (Drain, J.) (The

lack of an expert opinion on whether the claimant's physical impairments

medically equal any listed impairment is clear error and requires remand where the

record is not so lacking in medical findings that a finding of equivalence is

implausible.).  Unlike the plaintiff in *Brown*, as discussed in detail above, because

of the dearth of evidence pertaining to plaintiff's intellectual functioning and

adaptive skills during the developmental period, plaintiff has not shown that a

finding of equivalence is plausible here.

      D.    <u>RFC</u>

      Plaintiff also objects to the ALJ's RFC, arguing "extremely low intellectual

functioning" was not considered to be a severe impairment, and the decision does

not reflect how plaintiff's intellectual functioning was factored into his RFC

finding.  Plaintiff contends that since the ALJ did not specifically address his

intellectual functioning in the decision – other than briefly noting that Dr. Tripi

found scores in the "extremely low" range – there is no indication that she based

her RFC finding on all relevant evidence in the record.  (Tr. 20).  She did not

weigh these scores or otherwise discuss their validity.  While the ALJ weighed

other portions of the opinion of Dr. Tripi – specifically, the "statement of
unemployability and the conclusions from a mental residual functional capacity
assessment" – plaintiff maintains that her reasoning does not address the IQ scores
obtained by Dr. Tripi, nor does it give any insight into why the ALJ may have
found that these scores did not affect plaintiff's RFC.  (Tr. 22).  Because the
decision does not show that the ALJ considered his intellectual functioning when
formulating his RFC, or the hypothetical on which the RFC was based, plaintiff
says the decision is not supported by substantial evidence.

        While the ALJ did include a limitation that plaintiff could only engage in
"simple, routine tasks defined as those generally mastered after a short
demonstration, that are goal oriented rather than production-paced," plaintiff
contends that this does not necessarily account for all of the limitations that would
arise from plaintiff's low intellectual functioning.  For example, the VE testified
that a person could not do any of the jobs listed in response to the hypothetical –
"or any other work, for that matter" – if they were unable to understand or carry
out even simple, routine tasks on a sustained basis.  (Tr. 78).  Plaintiff argues that it
is plausible that a person with a verbal comprehension IQ score of 63 – which is in
the "extremely low" range – may have trouble understanding even simple
instructions.

        The Commissioner points out that not all impairments (even severe

impairments) will necessarily have correlating functional limitations in the RFC assessment. *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007). The Commissioner also argues that plaintiff fails to suggest what additional functional limitations the ALJ should have included in the RFC assessment. *See Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (the claimant bears the burden of demonstrating the need for a more restrictive RFC); *see also Berry v. Comm'r of Soc. Sec.*, 2016 WL 7664225, at *11 (E.D. Mich. Dec. 8, 2016), rep. & rec. adopted, 2017 WL 67458 (E.D. Mich. Jan. 6, 2017) ("Berry gives no indication what additional restrictions might be necessary to accommodate his conditions, but merely mentions the possibility that the ALJ could have included more restrictive limitations in his RFC assessment. . . . Instead, he leaves it to the Court to determine which further restrictions might be appropriate. Berry's underdeveloped argument should be found waived." (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997))).

The Commissioner also points out that the ALJ expressly considered and weighed Dr. Tripi's report and further expressly noted plaintiff's performance on the WAIS-IV intelligence test. (Tr. 20, 22). Furthermore, the ALJ expressly found that plaintiff did not have "disabling cognitive dysfunction" while acknowledging his limited education. (Tr. 21). According to the Commissioner, these findings in the ALJ's decision belie plaintiff's argument that the ALJ ignored evidence of his

intellectual functioning.  Additionally, the ALJ included limitations in the RFC assessment to account for, in part, plaintiff's "limited education," which the Commissioner says reflects that the ALJ considered plaintiff's intellectual functioning.  The ALJ limited plaintiff to simple, routine tasks that are goal oriented rather than production paced.  (Tr. 16, 23).  And, plaintiff does not actually point to any evidence in the record that he was unable to carry out simple, routine tasks on a sustained basis.  Rather, to the contrary, even Dr. Tripi opined that plaintiff was only moderately limited (not precluded) in his ability to understand, remember and carry out short, simple instructions and work-like procedures.  (Tr. 404-05).

Plaintiff essentially asks the court to re-weigh the evidence.  However, even if there is substantial evidence supporting a different RFC, if the ALJ's decision was within the "zone of choice," it must be affirmed.  The undersigned finds that it is.  The Commissioner's assertion that plaintiff does not point to evidence in the record showing that he is more limited than as found in the RFC is well-taken. Plaintiff merely suggests, based on his IQ testing, that he *could* be more limited. However, even Dr. Tripi opined that plaintiff was only moderately limited in his ability to remember locations and work-like procedures, his ability to understand and remember very short and simple instructions, his ability to carry out short and simple instructions, his ability to work in work in coordination or proximity to

others without being distracted by them, the ability to interact appropriately with the general public, the ability to ask simple questions and request assistance, the ability to respond appropriately to changes in the work setting, the ability to be aware of hazards and take appropriate precautions, and the ability to set realistic goals or make plans independently of others. (Tr. 405-406). While Dr. Tripi found plaintiff to be extremely and markedly impaired in other functional areas, plaintiff does not directly challenge the little weight the ALJ gave to those opinions and does not challenge any aspect of the RFC except to suggest that someone with plaintiff's IQ may not be able to understand or carry out even simple, routine tasks on a sustained basis. Yet, plaintiff does not explain how the ALJ's RFC, which limits plaintiff to simple, routine tasks that are goal oriented rather than production paced, does not accommodate his intellectual limitations, and this is his burden.

And, it is also clear that the ALJ, as the Commissioner explains, did consider plaintiff's intellectual limitations in assessing the RFC. The Commissioner also points out that the ALJ expressly considered and weighed Dr. Tripi's report and further expressly noted plaintiff's performance on the WAIS-IV intelligence test. (*See* Tr. 20-22) (ALJ expressly considered and weighed Dr. Tripi's report and noted plaintiff's performance on the intelligence testing; ALJ found that plaintiff did not have "disabling cognitive dysfunction" while acknowledging his limited education.).

Plaintiff's reliance on *Mathious* is misplaced.  In that case, the court found that a 57 full scale IQ combined with the marked limitations found by one physician and the plaintiff's severe medical and emotional problems, provided substantial evidence, if unrebutted, that the plaintiff lacked the mental RFC to work any job on a regular and continuous basis.  Plaintiff points to no such similar evidence here and thus, the undersigned finds no basis to remand for reconsideration of the RFC based on *Mathious*.  For these reasons, the ALJ's RFC is supported by substantial evidence.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that the Commissioner's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: September 11, 2018              s/Stephanie Dawkins Davis
                                     Stephanie Dawkins Davis
                                     United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>September 11, 2018</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

<div style="margin-left: 40%;">

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov

</div>